**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WALGREENS HEALTH INITIATIVES, INC., an Illinois corporation, | ) ) No. 1:08-cv-00082 ) |
| Plaintiff, | ) **ANSWER OF DEFENDANT CASE** ) **NEW HOLLAND INC. TO** |
| v. | ) **PLAINTIFF'S COMPLAINT FOR** ) **DAMAGES AND DECLARATORY** |
| CASE NEW HOLLAND INC., a Delaware corporation, | ) **RELIEF** ) ) Jury Demand |
| Defendant. | ) |

**ANSWER**

Defendant Case New Holland Inc. ("CNH"), by and through its undersigned attorneys, in answer to the Complaint of Plaintiff Walgreens Health Initiatives, Inc. ("WHI"), states as follows:

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

1. In this action, plaintiff Walgreens Health Initiatives, Inc., formerly known as WHP Health Initiatives, Inc., ("WHI") seeks compensatory and punitive damages and declaratory relief against defendant Case New Holland Inc. ("CNH") arising out of CNH's breach of its contractual obligations under a Prescription Service Agreement (hereinafter the "Agreement") between the parties and CNH's conversion of funds belonging to WHI.

ANSWER: CNH admits that WHI seeks relief, but denies that WHI is entitled to the relief requested in Paragraph 1. CNH denies all remaining allegations of Paragraph 1.

2. Most immediately at issue are rebate checks totaling almost $850,000 sent erroneously by WHI to CNH in March 2007 and June 2007. In defiance of its obligations under both the parties' Agreement and Illinois law, CNH has refused to return these checks, willfully and improperly converting the funds to its own use. Also at issue are CNH's failure and continuing breach to pay for certain services admittedly rendered by WHI. To settle this latter question and various unwarranted claims made by CNH, WHI also seeks declaratory relief in this case.

ANSWER: CNH admits that in March and June 2007 it received rebate checks from WHI totaling almost $850,000. CNH denies all remaining allegations of Paragraph 2, and further denies that WHI is entitled to the relief requested in Paragraph 2.

## THE PARTIES

3. Plaintiff Walgreens Health Initiatives, Inc., formerly known as WHP Health Initiatives, Inc. (hereinafter "WHI" or "Plaintiff"), is an Illinois corporation with its principal place of business and corporate headquarters in Deerfield, Illinois. WHI is in the business, among other things, of providing prescription benefit management and claim processing services to corporate sponsors of health benefit programs.

ANSWER: CNH admits the allegations contained in Paragraph 3.

4. Defendant Case New Holland Inc. (hereinafter "CNH" or "Defendant") is a Delaware corporation with its principal place of business in Racine, Wisconsin. An agricultural and construction equipment corporation, CNH sponsors health benefit programs for its employees and, for a time, used WHI's prescription benefit management and claim processing services as part of that program.

ANSWER: CNH admits it is a Delaware corporation with its principal place of business in Racine, Wisconsin. CNH further admits that it sponsors health benefit programs for the employees of its various subsidiaries and, for a time, used WHI's prescription benefit management and claim processing services as part of that program.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that the dispute is one between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

ANSWER: CNH does not dispute that this Court has jurisdiction over this matter.

6. Venue properly lies in the United States District Court for the Northern District of Illinois under 28 U.S.C. § 1391 because the events giving rise to the claims asserted herein occurred in this District.

ANSWER: CNH does not dispute that venue is proper in the Northern District of Illinois.

## THE FACTS

7.   CNH provides its employees with certain health benefit programs, including a program under which their employees can, at a managed cost, purchase prescription drugs.

ANSWER: CNH admits that it provides the employees of its various subsidiaries with certain health benefit programs under which their employees can, at a managed cost, purchase prescription drugs.

8.   Effective January 1, 2004, CNH entered into a Prescription Service Agreement (the "Agreement") with WHI under which WHI was to act as the sole and exclusive provider of prescription benefit management and pharmacy claim processing services to and on behalf of CNH and its employee participants. (A true and accurate copy of the Agreement is attached hereto as Exhibit A).

ANSWER: CNH admits that it entered into a Prescription Service Agreement (the "Agreement") with WHI that became effective on January 1, 2004. CNH states that the terms of the Agreement speak for themselves, and CNH denies all allegations inconsistent therewith. CNH admits that Exhibit A to the Complaint is a true and accurate copy of the Agreement.

9.   Under the Agreement, CNH was obligated to pay for WHI's services in a timely fashion. The Agreement expressly reinforced the material importance of this requirement, stating that "[a]t no time may [CNH] withhold payment for services provided by WHI … nor pay an amount less than that billed by WHI," even where it questioned or contested the amounts owed. Agreement, §C.3. As the Agreement specifies, any necessary adjustment was to be made only after payment was made. *Id.*

ANSWER: CNH states that the terms of the Agreement, including Section C.3, speak for themselves, and CNH denies all allegations inconsistent therewith.

10.   Under the Agreement, WHI not only provided services, but also agreed to make certain rebate payments to CNH (the "WHI Payments") for each prescription drug claim paid by CNH during the term of the Agreement. These payments were to be made in arrears nine (9) months after the quarter in which services were provided. WHI agreed to make these payments to CNH in anticipation of certain Manufacturer Incentives it expected to receive from pharmaceutical companies because of WHI's role in servicing the CNH health benefits prescription drug plans.

ANSWER: CNH states that the terms of the Agreement speak for themselves, and CNH denies all allegations inconsistent therewith.

11. The WHI Payments were to be made regardless of the amount of any Manufacturer Incentives received by WHI, provided that CNH did not materially change its benefit design or WHI's formulary. Because of the resulting risk to WHI, WHI provided certain protections for itself in the Agreement with respect to the WHI Payments. These included that WHI could stop the payments to CNH if CNH materially changed the program in any respect, as determined in WHI's sole discretion. Agreement, §A.4(e).

ANSWER: CNH states that the terms of the Agreement speak for themselves, and CNH denies all allegations inconsistent therewith. CNH has insufficient information to form a belief about the truth of the allegations contained in the second sentence of Paragraph 11.

12. WHI was also entitled to cease making payments, even if already accrued, in CNH breached the Agreement, terminated the Agreement or terminated some portion of it that would in WHI's sole discretion materially affect WHI's ability to receive Manufacturer Incentives. As specified in Section A.4(f) of the Agreement:

> (f) … WHI Payments will immediately cease accruing to [CNH] and [CNH] hereby expressly authorizes WHI to retain any and all WHI Payments that have accrued to such date, upon the occurrence of any of the following:
>
> i. breach by [CNH] of any obligations set forth in this Agreement;
>
> ii. termination of this Agreement by either party or receipt by WHI of notice from [CNH] that [CNH] intends to terminate any portion hereof which in WHI's sole discretion may adversely impact the value of Manufacturer Incentives WHI receives hereunder;
>
> iii. WHI's exercise of its right to terminate any clinical program services, including formulary management, under Section B.1, below if, in WHI's sole discretion, such termination may adversely impact the value of Manufacturer Incentives WHI receives hereunder; and
>
> iv. any change in the pharmaceutical industry practices regarding the payment of Manufacturer Incentives.

ANSWER: CNH states that the terms of the Agreement speak for themselves, and CNH denies all allegations inconsistent therewith. Answering further, CNH states that Section A.4(f) addresses cash flow management issues related to the Manufacturer Incentives WHI received under the Agreement and the WHI Payments that WHI was obligated to make to CNH. CNH specifically denies that Section A.4(f) of the Agreement constitutes a penalty provision entitling

WHI to retain all WHI Payments that had already accrued in the event that either party terminated the Agreement in accordance with Section E.1.

13.  Pursuant to Sections C.4 and G.8 of the Agreement, CNH agreed to pay all expenses, including attorney's fees, in connection with enforcement of the Agreement.

ANSWER:  CNH states that the terms of the Agreement speak for themselves, and CNH denies all allegations inconsistent therewith.

14.  CNH failed to pay certain amounts owed and billed under the program, withholding payment in express violation of Section C.3 and thereby breaching the Agreement. WHI has repeatedly informed CNH that the amounts are due and owing, but CNH has failed to pay the required amounts. Until recently, CNH has never raised any objection to the amounts set out as due and owing.

ANSWER:  CNH denies the allegations contained in Paragraph 14.

15.  CNH terminated the Agreement effective as of December 31, 2006.

ANSWER:  CNH admits the allegations contained in Paragraph 15.

16.  During 2007, after CNH's breach and later termination of the Agreement, WHI mistakenly sent two checks to CNH for WHI Payments for the second and third quarters of 2006. These were provided by way of a check numbered 10344904, in the amount of $419,363.96, and a check numbered 10397492, in the amount of $428,371.11. Pursuant to Section A.4(f), these amounts were not owed, given CNH's termination and breach of the Agreement.

ANSWER:  CNH admits that, during 2007, CNH received checks from WHI for WHI Payments in the amounts of $419,363.96 and $428,371.11. CNH states that the terms of the Agreement speak for themselves, and CNH denies all allegations inconsistent therewith. CNH denies all remaining allegations of Paragraph 16.

17.  On October 25, 2007, having realized that the payments were mistakenly made, WHI sought their return from CNH and sent a letter to CNH to that effect. On the same date, WHI also reminded CNH that it was delinquent on $12,390.95 owed to WHI for pharmacy benefit management services WHI rendered to CNH under the Agreement. WHI also reminded CNH that CNH's failure to pay for these services additionally harms WHI's network pharmacies, as the network pharmacies continue to go unpaid for medication dispensed to CNH members. (A true and correct copy of the October 25, 2007 letter is attached hereto as Exhibit B).

ANSWER:  CNH admits that it received a letter from WHI dated October 25, 2007 and that Exhibit B to the Complaint is a true and correct copy of that letter. CNH states that the terms of the letter speak for themselves, and CNH denies all allegations inconsistent therewith.

18.      CNH refused to return the checks or refund the amounts covered by them. Instead, on November 21, 2007, CNH requested that WHI "substantiate how the termination 'may adversely impact the value of Manufacturer Incentives WHI receives.'" This request was not in good faith and grossly improper as it was a misapplication of the actual language of the Agreement and was willfully advanced solely to temporize and/or avoid repaying what was owed to WHI under a distorted interpretation of the Agreement and in wanton disregard of WHI's rights. (A true and correct copy of the November 21, 2007 letter is attached hereto as Exhibit C).

ANSWER:  CNH admits that it did not return the two WHI Payments that are at issue in this action, and that in a letter dated November 21, 2007, CNH requested support for WHI's assertion that CNH was not entitled to those WHI Payments. CNH further admits that Exhibit C to the Complaint represents a true and correct copy of that letter. CNH denies all remaining allegations contained in Paragraph 18.

19.      Accordingly, on November 29, 2007 WHI again demanded return of the two rebate checks. (A true and correct copy of the November 29, 2007 letter is attached hereto as Exhibit D). Again, instead of complying with the express language of the Agreement, CNH renewed the same improper conduct and responded to WHI on December 7, 2007, by saying that WHI had not identified an "adverse impact" sufficient to justify WHI's retention of the WHI Payments. CNH willfully refused to refund the rebate money to WHI in wanton disregard of WHI's rights. (A true and correct copy of the December 7, 2007 letter is attached hereto as Exhibit E).

ANSWER:  CNH admits that it received a letter from WHI dated November 29, 2007, and that Exhibit D to the Complaint represents a true and correct copy of that letter. CNH also admits that Exhibit E to the Complaint represents a true and correct copy of a December 7, 2007 letter sent to WHI from CNH, wherein CNH rejected WHI's demand for the return of the two WHI Payments at issue in this action. CNH denies all remaining allegations contained in Paragraph 19.

20. Also on December 7, 2007, and again in defiance of the Agreement, CNH asserted that it was entitled to additional WHI Payments for the last quarter of 2006. At the same time, while purportedly agreeing to reimburse WHI for any pharmacy benefit management services owed, it made no payment of the $12,390.95 previously withheld in violation of Section C.3. As of the filing of this complaint, CNH has failed to pay the invoice amounts.

ANSWER: CNH admits that it demanded a WHI Payment for the last quarter of 2006. CNH denies all remaining allegations in Paragraph 20.

21. WHI has performed all of its obligations under the Agreement. WHI is contractually entitled to the rebate amounts in CNH's possession and entitled to payment for unpaid invoices WHI submitted to CNH for services WHI performed in 2004.

ANSWER: CNH denies the allegations contained in Paragraph 21.

## COUNT I

### (Breach of Contract)

22. Plaintiff realleges and incorporates herein by reference the allegations of Paragraphs 1 through 21 above.

ANSWER: CNH restates and incorporates herein by reference its answers to Paragraphs 1 through 21 above.

23. The Agreement was a binding contract between WHI and CNH.

ANSWER: CNH admits the allegations contained in Paragraph 23.

24. CNH failed and refused to perform its obligations under the Agreement by, among other things, failing to return the WHI Payments mistakenly paid.

ANSWER: CNH denies the allegations contained in Paragraph 24.

25. As a result of CNH's breach, WHI has been damaged in an amount to be proved at trial, not less than $847,735.07.

ANSWER: CNH denies the allegations contained in Paragraph 25.

26. WHI has performed all of its obligations under the Agreement.

ANSWER: CNH denies the allegations contained in Paragraph 26.

## COUNT II

### (Breach of Contract)

27. Plaintiff realleges and incorporates herein by reference the allegations of Paragraphs 1 through 26 above.

ANSWER: CNH restates and incorporates herein by reference its answers to Paragraphs 1 through 26 above.

28. The Agreement was a binding contract between WHI and CNH.

ANSWER: CNH admits the allegations contained in Paragraph 28.

29. CNH failed and has refused to perform its obligations under, and is and has been in breach of the Agreement by withholding amounts billed and refusing to pay amounts owed.

ANSWER: CNH denies the allegations contained in Paragraph 29.

30. As a result of CNH's breach, WHI has been damaged in an amount to be proved at trial, not less than $12,390.95.

ANSWER: CNH denies the allegations contained in Paragraph 30.

31. WHI has performed all of its obligations under the Agreement.

ANSWER: CNH denies the allegations contained in Paragraph 31.

## COUNT III

### (Account Stated)

32. Plaintiff realleges and incorporates herein by reference the allegations of Paragraphs 1 through 31 above.

ANSWER: CNH restates and incorporates herein by reference its answers to Paragraphs 1 through 31 above.

33. An account has been duly had and stated between WHI and CNH in the amount of $12,390.95 for unpaid invoices related to WHI's pharmacy benefit management services to CNH under the Prescription Service Agreement. The account is set forth in Exhibit F hereto.

ANSWER: CNH denies the allegations contained in Paragraph 33.

34. CNH has acquiesced to the amount of the debt. CNH has raised no objection that these accounts are properly stated and are currently due and owing.

ANSWER:  CNH denies the allegations contained in Paragraph 34.

35.    Despite promises to do so, CNH has failed to pay the amounts stated in those accounts.

ANSWER:  CNH denies the allegations contained in Paragraph 34.

36.    As a result of CNH's conduct, WHI has been damaged in the amount of $12,390.95.

ANSWER:  CNH denies the allegations contained in Paragraph 36.

## COUNT IV

### (Conversion)

37.    Plaintiff realleges and incorporates herein by reference the allegations of Paragraphs 1 through 36 above.

ANSWER:  CNH restates and incorporates herein by reference its answers to Paragraphs 1 through 36 above.

38.    CNH has refused to return to WHI the funds represented by the two 2007 checks. WHI has the right to immediate possession of these funds, absolutely and unconditionally, and has made demand for same.

ANSWER:  CNH admits that it has not returned the two 2007 checks received from WHI. Answering further, CNH states that it was entitled to receive and is entitled to keep those WHI Payments pursuant to the Agreement. CNH denies all remaining allegations contained in Paragraph 38.

39.    CNH converted these funds to its own account and for its own benefit.

ANSWER:  CNH denies the allegations contained in Paragraph 39.

40.    CNH's conduct has damaged WHI in an amount to be proved at trial, not less than $847,735.07.

ANSWER:  CNH denies the allegations contained in Paragraph 40.

41.    CNH acted willfully and in a manner that was grossly improper in wanton disregard of WHI's rights.

ANSWER:  CNH denies the allegations in Paragraph 41.

## COUNT V

### (Declaratory Judgment)

42.     Plaintiff realleges and incorporates herein by reference the allegations of Paragraphs 1 through 41 above.

ANSWER:  CNH restates and incorporates herein by reference its answers to Paragraphs 1 through 41.

43.     The Agreement was a binding contract between WHI and CNH.

ANSWER:  CNH admits the allegations contained in Paragraph 43.

44.     WHI has performed all of its obligations under the Agreement. Nevertheless, CNH has, as aforesaid, claimed that it was entitled to further WHI Payments under the Agreement.

ANSWER: CNH denies that WHI has performed all of its obligations under the Agreement. CNH admits that it believes it is entitled to further WHI Payments in addition to the WHI Payments already received.

45.     CNH is not entitled to further payment(s) from WHI.

ANSWER:  CNH denies the allegations contained in Paragraph 45.

46.     An actual controversy exists between WHI and CNH with respect to whether WHI owes CNH any money.

ANSWER:  CNH admits the allegations contained in Paragraph 46.

47.     A declaration of this Court is necessary to resolve this controversy.

ANSWER:  CNH admits the allegations contained in Paragraph 47.

## COUNT VI

### (Declaratory Judgment)

48.     Plaintiff realleges and incorporates herein by reference the allegations of Paragraphs 1 through 47 above.

ANSWER:  CNH restates and incorporates herein by reference its answers to Paragraphs 1 through 47.

49. The Prescription Service Agreement was a binding contract between WHI and CNH.

ANSWER: CNH admits the allegations contained in Paragraph 49.

50. CNH breached the Agreement by withholding amounts for services rendered and billed to CNH.

ANSWER: CNH denies the allegations contained in Paragraph 50.

51. As a result of CNH's termination and breach of the Agreement, WHI was absolved of any further obligation to make the WHI Payments.

ANSWER: CNH denies the allegations contained in Paragraph 51.

52. WHI made the WHI Payments under the Agreement in error, as no amounts were accruing or were owed after the date of CNH's breach. CNH accordingly is obligated to repay these amounts.

ANSWER: CNH denies the allegations contained in Paragraph 52.

53. On information and belief, CNH disputes the foregoing.

ANSWER: CNH admits the allegations contained in Paragraph 53.

54. An actual controversy exists between WHI and CNH with respect to the foregoing.

ANSWER: CNH admits the allegations contained in Paragraph 54.

## AFFIRMATIVE DEFENSES

As and for its affirmative defenses to the claims brought against it by Plaintiff Walgreens Health Initiatives, Inc., CNH states as follows:

1. WHI's claims are barred by its failure to fully perform its own obligations under the contract.

2. WHI's claims are barred by the doctrine of equitable estoppel.

3. WHI's claims are barred by the doctrine of laches and waiver.

## CNH'S COUNTERCLAIMS AGAINST WHI

Counter-Plaintiff Case New Holland Inc. ("CNH") hereby asserts the following counterclaims against Counter-Defendant Walgreens Health Initiatives, Inc. ("WHI"):

### COUNTERCLAIM I (Breach of Contract)

1. Effective January 1, 2004, CNH entered into a Prescription Service Agreement (the "Agreement") with WHI. This Agreement was a valid and enforceable contract between CNH and WHI.

2. Pursuant to Section A.4(e) of the Agreement, WHI was obligated to make certain WHI Payments to CNH, subject to the terms and conditions set forth in Section A.4 and in Attachment A to the Agreement. These WHI Payments were based upon the value of certain Manufacturer Incentives that WHI expected to receive pursuant to the services it provided to CNH under the Agreement.

3. The exact amount of each WHI Payment was to be determined in accordance with the terms of Attachment A to the Agreement. The initial WHI Payment was to be made approximately nine (9) months after the end of the first calendar quarter of services provided under the Agreement, with subsequent payments to be made quarterly thereafter.

4. The Agreement was subject to termination by either party at any time without cause upon at least 90 days prior written notice to the other party. Agreement, §E.1. In accordance with this provision, CNH terminated the agreement effective as of December 31, 2006.

5. In accordance with its contractual obligations under the Agreement, WHI made a WHI Payment to CNH in March 2007 in the amount of $419,363.96. Another WHI Payment was

made in June 2007 in the amount of $428,371.11. These payments corresponded to services provided under the Agreement in the second and third quarters of 2006, respectively.

6.  Pursuant to the payment timeline set forth in Attachment A to the Agreement, a WHI Payment for the fourth quarter of 2006 should have been paid on or about October 1, 2007. Based upon the previous WHI Payments, the amount of this payment will likely exceed $400,000. Despite a demand from CNH, WHI has not yet complied with its contractual obligation to provide a WHI Payment for the fourth quarter of 2006.

7.  Section A.4(f)(ii) of the Agreement provided that WHI would be permitted to retain, upon termination of the Agreement, all WHI Payments that had accrued to that date *only* if the termination would adversely impact the value of Manufacturer Incentives WHI was set to receive. The termination of the Agreement on December 31, 2006 could not adversely impact the Manufacturer Incentives WHI would receive for services rendered during 2006.

8.  WHI has failed and refused to perform its contractual obligation to make a WHI Payment for the fourth quarter of 2006. As a direct result of WHI's breach, CNH has been damaged in an amount to be proved at trial, but believed to be at least $400,000.

### COUNTERCLAIM II (Accounting)

9.  CNH incorporates the allegations from Paragraphs 1 through 8 as if they were fully set forth in Counterclaim II.

10. WHI owes CNH a WHI Payment for the fourth quarter of 2006.

11. The amount of each WHI Payment was to be determined by the services provided to CNH and a payment table set out in Section VI.A of Attachment A to the Agreement.

12. In order to ensure that all amounts owed by WHI are paid, an accounting of the services provided to CNH under this Agreement during the fourth quarter of 2006 is warranted.

WHEREFORE, Defendant Case New Holland Inc. respectfully prays that this Court:

1. Dismiss the Complaint filed by WHI in its entirety and enter a judgment for CNH against WHI in an amount to be proved at trial, not less than $400,000;

2. Order WHI to account to CNH for all WHI Payments that are due to CNH; and

3. Grant such further relief as this Court shall deem just and proper.

Dated: February 13, 2008

                                                  *s/ Michael H. King*
                                                  Michael H. King
                                                  Daniel R. Burstein
                                                  DEWEY & LEBOEUF LLP
                                                  Two Prudential Plaza
                                                  180 North Stetson Avenue, Suite 3700
                                                  Chicago, IL  60601
                                                  (312) 794-8000
                                                  Fax: (312) 794-8100
                                                  Attorneys for Defendant Case New Holland Inc.